The Stone Law Firm, PLC
Harry N. Stone, Bar No.: 5281
Shawn L. Stone, Bar No.: 23558
3030 N. 3rd Street, Suite 200
Phoenix, AZ 85012
Tel: (602) 241-8575 / Fax: (602) 241-8512
*Attorneys for Plaintiffs, Steve Hillis and Diane Hillis*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| STEVE HILLIS and DIANE HILLIS, Husband and Wife, | **CASE NO.:** |
| Plaintiffs, | |
| vs. | **COMPLAINT** |
| RONALD E.  HEINEMAN and BARBARA L. HEINEMAN, Husband and Wife; BARBARA L. HEINEMAN, TRUSTEE OF THE YEAR 2002 REVOCABLE TRUST DATED AUGUUST 16, 2002; GREGORY BARTKO; PERSONS 1-10. | |
| Defendants. | |

Plaintiffs, complaining of the Defendants, allege as follows:

## NATURE OF CLAIMS

1.      In 2006, Plaintiffs purchased the unregistered securities of Resolve Staffing, Inc., a Nevada Corporation (the "Company"). The Company offered and sold securities consisting of 90 Units of the unregistered and nonexempt Common Stock of the Company with attached warrants to Plaintiffs in Arizona and Plaintiffs paid $135,000.00  to the Company.  Defendant Ronald E. Heineman ("Heineman") was the Company's President and Chief Executive Officer who was actively engaged and controlled such sale.  The Company's legal counsel was actively

engaged and participated in such offering and sale.  Plaintiffs sued the Company in Arizona Superior Court and obtained a Judgment for $810,050.00 plus a declaration that the Company was trustee of such $135,000.00 for the benefit of the Plaintiffs.  (See Arizona Judgment attached as Exhibit "A").

2.      Plaintiffs seek the following relief:

(a)     <u>Fraudulent Transfer</u>:   Judgment against Defendants for the fraudulent transfer for cash and assets by the Company to the Defendants. The Company fraudulently distributed cash to Heineman in the aggregate of at least $2,740,226 at a time when (i) the Company was insolvent, (ii) with actual intent to hinder, delay and defraud creditors of the Company and (iii) without receiving reasonably equivalent value in exchange and at a time when the Company intended to incur and reasonably should have believed to that it would incur debts beyond its ability to pay as they became due. [A.R.S. § 44-1004(A)].

(b)     <u>Racketeering</u>:  The sale of unregistered securities in Arizona is an act of racketeering as defined in A.R.S. § 13-2301(D)(4)(xix) (also called "Unlawful Act" or "Unlawful Acts").  The Company sold such unregistered securities to numerous purchasers thus engaging in a pattern of Unlawful Acts within the meaning of A.R.S. § 13- 2314.04(T)(3). A list of the purchasers is attached as Exhibit "B".

The Company is an "Enterprise" A.R.S. § 13-2301(D)(2) and Heineman is a person in "Control" [A.R.S. § 13-2301(D)(1)] who has been engaged in the "Illegal Control of an Enterprise".  [A.R.S.§ 13- 2312(A) and (B)].

Pursuant to A.R.S. § 13-2314.04(A), Plaintiffs seek judgment against Defendant Heineman for treble the Plaintiffs' injuries caused by Heineman's Control of the Company which is the Illegal Control of an Enterprise.

(c)     Conversion of Trust Assets:  The Arizona Judgment declared the Company to be a trustee for the benefit of the Plaintiffs of the $135,000.00 paid by Plaintiffs to the Company. Plaintiffs seek judgment against Defendant Heineman, President and Chief Executive Officer of the Company, for the sum of $135,000.00 plus interest from October 10, 2006 for Heineman's conversion of the $135,000.00 trust funds held by the Company. *Jabczenski v. Southern Pac. Memorial Hospitals*, 119 Ariz. 15, 579 P.2d 53 (App. 1978).  To the extent that any part of the $135,000.00 was received by any of the other Defendants, then judgment should be entered against such other Defendants for any part of the $135,000 received by such other Defendants.

(d)     Civil Conspiracy:  Gregory Bartko ("Bartko") , as securities attorney for the Company, knowingly entered into an agreement with Heineman to unlawfully offer and sell unregistered and nonexempt securities to residents of Arizona, including the Plaintiffs. In furtherance of such conspiracy, Bartko prepared and/or assisted in the preparation of Subscription Agreements for such securities and warrants.  Bartko knowingly drafted the Subscription Agreements to be submitted to Arizona residents in Arizona. At all times Bartko knew that the  Subscription Agreements falsely representation that the Securities were exempt for registration and omitted to disclose that the offer and sale of such securities in Arizona was unlawful.  Plaintiffs seek judgment against Bartko, jointly and severally with Heineman for at least $135,000.00 plus interest plus punitive damages.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction of the claims asserted herein pursuant

to: (i) 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000,

exclusive of interest and costs and is between citizens of different states and (ii) the Court has

supplemental jurisdiction over the state actions 28 U.S.C. §1367 and the principles of pendent

jurisdiction.

4.     The Court has personal jurisdiction over the named Defendants by reason of the

following:

(a)     Personal service on the Defendants pursuant to the law of Arizona, (Rule 4(e)(1),

F.R.C.P.) with establishes personal jurisdiction over the Defendants who could be subjected to

the jurisdiction of a Court of general jurisdiction in Arizona.  [Rule 4(k)(1)(A), F.R.C.P.].

(b)     Jurisdiction is authorized under Arizona's long arm Statute.

(c)     Defendants knowingly caused the offering and sale of unregistered securities in

the State of Arizona including offering and selling the Company's securities to the Plaintiffs,

all of which constituted unlawful acts in violation of Arizona law and which unlawful acts were

targeted and intended for Arizona residents including the Plaintiffs in Arizona.  *Uberti v.*

*Superior Court*, 181 Ariz. 565, 892 P.2d 1354 (1995).

(d)     The Company maintained at least one salesperson in Arizona to effect sales of

the Company's securities, namely John Fox, a resident of Arizona.

5.     Defendants are subject to the personal jurisdiction of the State of Arizona

because they have engaged in a pattern of unlawful activities in Arizona, namely, the

intentional sale of unregistered and non-exempt securities. A.R.S. § 13-2301(D)(4)(xix).

**PARTIES**

6.      At the time of the filing of this action and at all relevant times herein,

(a)      Plaintiffs were residents and citizens of the County of Maricopa, State of Arizona.

(b)      Defendants Ronald E. Heineman and Barbara L. Heineman were husband and wife and residents of the State of Ohio, each acting as agents for and for the benefit of their marital community.

(c)      Barbara L. Heineman, is the Trustee of the Heineman Trust is a resident and citizen of the State of Ohio and the Trust's situs is in Ohio.

(c)      Defendant Gregory Bartko ("Bartko") was a resident and citizen of the State of Georgia and was actively engaged in a civil conspiracy with Heineman in the unlawful sale of unregistered and nonexempt securities within Arizona.

(d)      PERSONS 1-10 are fictitiously named individuals, corporations or other business entities who may be held liable as principals, transferees or subsequent transferees. Upon determination of their true identity, Plaintiffs will seek leave of the Court to add such fictitious persons as Defendants.

7.      Defendant Ronald E. Heineman marital community is liable for the wrongful acts alleged herein.

**GENERAL ALLEGATIONS**

8.      At all times herein mentioned:

(a)   <u>Enterprise</u>:  Resolve was an "Enterprise" within the meaning of  A.R.S. § 13-2301(D)(2) which defines "Enterprise" as "*any corporation, partnership, association, labor union or other legal entity or any group of persons associated in fact although not a legal entity.*"

(b)   <u>Control</u>: Heineman was a person in "Control" within the meaning of  A.R.S. § 13-2301(D)(1) which defines "Control" as being in "*the possession of sufficient means to permit substantial direction over the affairs of an enterprise and, in relation to property, means to acquire or possess.*"

(c)   <u>Illegal Control of an Enterprise</u>:  Heineman were each persons in "Illegal Control of an Enterprise" within the meaning of A.R.S. 13-2312(A) and (B) in that Heineman:

(i)   through racketeering or its proceeds, acquired or maintained, by investment or otherwise, control of the Company, an Enterprise, and

(ii)   was employed by or associated with the Company, an Enterprise, and conducted such enterprise's affairs through racketeering or participated directly or indirectly in the conduct of Company that Heineman knew is being conducted through racketeering.

9.   On or about September 26, 2006, the Company, through agents and salespersons, including a salesperson in Arizona, offered for sale and sold 1,000,000 shares of the Company's Units, each Unit consisting of (i) One share of Company common stock, $.0001 Par Value ("Resolve Common Stock") plus (ii) two warrants to purchase an additional two shares of Company Common Stock at $2.00 ("Private Placement Securities").  In September of 2007, warrants to purchase additional shares of the Company's Common Stock ["2007

Company Warrants"] were provided to the purchasers of the Private Placement Securities [also called the "Private Placement Purchasers"].  A listing of the Private Placement Purchasers is attached as Exhibit"C".

10.     Each of the Private Placement Purchasers filled out and signed a Subscription Agreement, drafted by or on behalf of the Company, stated that: "THE SECURITIES OFFERED HEREBY….ARE BEING ISSUED PURSUANT TO AN EXEMPTION FROM REGISTRATION PROVIDED BY SECTION 3(b) OR SECTION 18 OF THE SECURITIES ACT OF 1933".  (Copy of Subscription Agreement is attached as Exhibit "D").

11.     The Private Placement Securities and the 2007 Company Warrants were "Securities" within the meaning of A.R.S. § 44-1801(26), and, pursuant to A.R.S. § 44-1841 the selling or offering for sale of such Securities within or from Arizona is unlawful unless such Securities have been registered.

12.     On April 27, 2007, the Company filed, with the United States Securities and Exchange Commission ("S.E.C.") a Form s-1/A Registration Statement (the "Registration Statement") pursuant to which the Company sought to publicly sell the One Million Shares of the Private Placement Securities and Two Million Shares of the Company's Common Stock to be issued upon the exercise of the warrants held by the Private Placement Shareholders. Attached as Exhibit "E" are Pages 1 through 3 of the Registration Statement as filed with the S.E.C.

## SPECIFIC ALLEGATIONS

13.     In September of 2006 the Company offered and sold 90,000 Units of the Private Placement Securities to the Plaintiffs who signed a Subscription Agreement and paid the

Company $135,000.00 for such securities.  A coy of the Plaintiffs' Subscription Agreement is attached as Exhibit "C".

14.     In September of 2007, in consideration of the $135,000 previously paid to the Company, the Company sent the Plaintiffs a New Warrant Certificate for 90,000 warrants, signed by Heineman as President and Chief Executive Officer, granting Plaintiffs the right to purchase 45,000 shares of the Company's Common Shares at $1.25 per share plus an additional 45,000 shares of the Company's Common Shares at $1.75. The New Warrant Certificate was signed by the Defendant Heineman.  A copy of the New Warrant Certificate is attached as exhibit "G".

15.     On December 31, 2007, the Company, having defaulted in its financial obligations to its primary creditor, Fifth Third Bank (the "Bank"), was forced to cease operations when the Bank foreclosed on the Company's assets.  On March 14, 2008, the Company filed a notice of termination with the S.E.C. ceasing future trading on the Company's securities.

## COUNT I
## FRAUDULENT CONVEYANCE

16.     Paragraphs 1 through 15 are realleged and incorporated in this Count I.

17.     A.R.S. § 44-1002(A) states that "A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation."

18.     At all times herein mentioned, each of the Plaintiffs was a "Creditor" of the Company within the meaning of A.R.S. § 44-1001(1)(3) holding a "Claim" within the meaning of A.R.S. § 44-1001(1)(2).

19.     During the calendar years of 2004, 2005 and 2006, the Company made distributions to Heineman in the aggregate sum of $2,740,226 or more as follows: (i) $1,828,038 in 2004, (ii)  $721,992 in 2005 and (iii) $190,196 in 2006 for a total of $2,740,226 (also called the "Heineman  Distributions").

20.     The Heineman  Distributions were fraudulent as to the Plaintiffs in that such distributions:

(a)     were made by the Company with actual intent to hinder, delay and defraud creditors of the Company, including the Plaintiffs, and

(b)     were made without the Company's receiving a reasonably equivalent value in exchange for the Heineman Distributions and the Company intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as such debts became due.

21.     The Heineman Distributions were made by the Company:

(a)     to Heineman, an insider, a person who was the President and/or the Chief Executive Officer of the Company;

(b)     at a time or shortly before the time that the Company became insolvent;

(c)     were not reasonably equivalent in value of property, assets or services received by the Company in exchange; and

(d)     at a time shortly before or shortly after the Company incurred a substantial debt.

22.    Heineman did not act in good faith when he accepted the Heineman Distributions and the Company did not receive a reasonably equivalent value and is not entitled to the defenses available under A.R.S. § 44-10(A).

23.    By reason of the foregoing, the Heineman Distributions are avoidable within the meaning of A.R.S. § 44-1007(A)(2) and in accordance with A.R.S. § 44-1008(B)(1), Plaintiff is entitled to recover judgment against Heineman in the amount of the Heineman Distributions.

## COUNT II
## RACKETEERING

24.    Paragraphs 1 through 15 are realleged and incorporated in this Count II.

25.    The Company, during the period of September 2006 and thereafter engaged in a pattern of racketeering activity within the meaning of A.R.S. § 13-2314.04(3) including the Company engaging in two or more of the unlawful acts defined in A.R.S. §13-2301(D)(4)(b)(xix), namely, the intentional sale of unregistered securities within Arizona, which were undertaken for financial gain in violation of A.R.S. § 44-1481 which violations are chargeable or indictable under the laws of the State of Arizona and would be punishable by imprisonment for more than one year.

26.    The Company, at all times herein mentioned, was an "Enterprise" within the meaning of A.R.S. § 13-2301.

27.    At all time herein mentioned, Defendant Heineman was engaged in the "Illegal Control of an Enterprise" within the meaning of A.R.S. § 13-2312(A) in that Heineman:

(a)    through racketeering or its proceeds, acquired or maintained, by investment or otherwise, control of any enterprise, and/or

(b)     was employed by or associated with the Company, an Enterprise, and conducted such Enterprise's affairs through racketeering or participates directly or indirectly in the conduct of an enterprise that the person knows is being conducted through racketeering.

28.     Plaintiffs are persons who sustained reasonably foreseeable and proximately caused injury to their person, business or property by a pattern of racketeering activity and by a violation of Section 13-2312 involving a pattern of racketeering activity and by reason thereon, Heineman is accountable in damages to the Plaintiffs for their financial loss of $135,000.00.00 plus interest from October 10, 2006 to the date of judgment, all of which is subject to being trebled pursuant to A.R.S. § 13-2314.04(A) including attorneys' fees and costs.

## COUNT III
## CONVERSION

29.     Paragraphs 1 through 15 are realleged and incorporated in this Count III.

30.     On or about October 2006 or thereafter, Heineman and, upon information and belief, Barbara Heineman and the Trust converted to said Defendants' own use, property, namely, money or the proceeds therefore (the "Property"), owned by the Plaintiffs and held in trust by the Company.  The converted Property consisted of United States funds in the sum of $135,000.00.

31.     Plaintiffs are entitled to judgment against one or more of the Defendants, jointly and severally for the sum of $135,000.00 plus interest at the legal rate of 10% per annum from October 10, 2006 to the date of payment.

## COUNT IV
## CONVERSION AGAINST BARTKO

32.     Paragraphs 1 through 15 are realleged and incorporated in this Count IV.

33.     Bartko entered into a civil conspiracy by agreeing with Heineman to cause unregistered and nonexempt securities to be sold to Arizona Residents in Arizona, including the Plaintiffs.

34.     In furtherance of such civil conspiracy, Bartko as securities counsel, actively prepared Subscription Agreements which, with Bartko's knowledge, were targeted to Arizona residents, including the Plaintiffs, which offered the sale of the Company's Common Stock and attached Warrants

33.     Such Subscription Agreements falsely represented that the Company's Securities were exempt for registration and omitted to disclose that the offering and sale of the  was unlawful under Arizona law.

34.     As a direct and proximate cause of the foregoing acts by Bartko, Plaintiffs have suffered financial damages of at least  $135,000.00 and also suffered from emotional distress, anxiety and anguish. Bartko is therefore liable to the Plaintiffs for such compensatory damages as may be awarded at the trial of this action.  As discovery progress, additional facts may surface which would justify the imposition of punitive damages, in which case Plaintiffs will seek leave to amend the Complaint to add a claim for punitive damages.

WHEREFORE, Plaintiffs pray for judgment as follows:

A.      With respect to Count I, Fraudulent Conveyance:

(i)     An order avoiding the transfer of the sum of the $2,740,226 from the Company to Heineman, and

(ii)    Judgment against Heineman and his marital community for the sum of $810,050 plus prejudgment and post judgment interest at the legal rate of 10% until paid.

B.      With respect to Count II, Racketeering, judgment against Heineman and his marital community in the sum of $810,050 plus interest from October 10, 2006 plus attorneys' fees and cost all of which to be trebled.

C.      With respect to Count III, Conversion,  judgment against Heineman and his marital community in the sum of $135,000 plus interest from October 10, 2006 plus attorneys' fees and cost.

D.      With Respect to Count IV, judgment against Bartko for civil conspiracy in such amount as may be determined upon the trial of this action.

E.      Such additional relief against all Defendants as the Court may deem just and proper.

DATED:  January 12, 2009.

THE STONE LAW FIRM, PLC

_/ s /  Harry Stone_
Harry N. Stone
Shawn L. Stone
Attorneys for Plaintiff

**EXHIBIT "A"**

FILED
1-5-09   9:37am
• MICHAEL K. JEANES, Clerk
By_____
Deputy

1  The Stone Law Firm, PLC
   Harry N. Stone, Bar No. 5281
2  Shawn L. Stone, Bar No. 23558
3  3030 N. 3rd Street, Suite 200
   Phoenix, AZ 85012
4  Tel: (602) 241-8575 / Fax: (602) 241-8512
   *Attorneys for Plaintiffs, Steve Hillis and Diane Hillis*
5

6  ## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
   ## IN AND FOR THE COUNTY OF MARICOPA

7

8  STEVE   HILLIS   AND   DIANE   HILLIS,
   Husband and Wife                          **CASE NO. CV2008-024095**

9                        Plaintiffs,         **JUDGMENT**
   vs.

10 RESOLVE STAFFING, INC., a Nevada          (Assigned Hon. Sam Myers)
   Corporation; JOHN R. FOX and SVETLANA
11 FOX, Husband and Wife; WAYNE LANE         (Before Commissioner Lindsay Ellis)
   INVESTMENT, LTD.; WAYNE LANE
12 MANAGEMENT CO. LLC; DOES 1 TO 10;
13 ENTITIES 1-10.

14                        Defendants.        CERTIFIED COPY

15

16

17     This matter having come before this Court on January 5, 2009 on PLAINTIFF'S

18 MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT RESOLVE

19 STAFFING, INC. and attorney Harry N. Stone having appeared for the Plaintiffs and no-one

20 appearing on behalf of the Defendant Resolve Staffing, Inc. and the Court, having reviewed the

21 pleadings in the case and the Court having heard the testimony of Plaintiff, Steve Hillis,

22     NOW, THEREFORE, the Court hereby makes the following findings of facts and

23 conclusions of law.

24

25 ///

Judgment – Page 1 of 8

# EXHIBIT "A"

## JURISDICTIONAL FINDINGS

1.     The Defendant, RESOLVE STAFFING, INC. (also referred to as "RESOLVE" or "Defendant") is a corporation formed and organized under the laws of the State of Nevada and duly authorized to do business in the State of Arizona.

2.     Defendant, RESOLVE, was duly served with the summons and complaint in this action and this court had personal jurisdiction over this Defendant.

3.     The Defendant has failed to appear, plead or otherwise defend against in the action and an Application for Entry of Default was filed on November 6, 2008 and the Default became final on November 17, 2008 pursuant to Rule 55(a)(2), A.R.C.P.

## FINDING OF FACT

4.     On September 26, 2006, Defendant, through its authorized agents, offered for sale to the public, including the Plaintiffs, warrants and shares of the Common Stock of Resolve Staffing, Inc. (the "Securities"). The Securities were neither registered for sale as required under Arizona or Federal securities laws or regulations. No evidence has been provided pertaining to any exemption from registration applicable to such Securities and, pursuant to A.R.S. § 44-2033, the Court finds that such Securities were not exempt for registration.

5.     The Securities offered for sale and sold to the Plaintiffs consisted of 90,000 Units of Resolve Staffing, Inc. Securities, each Unit consisting of one share of the common stock of Resolve Staffing, Inc. plus one warrant authorizing the Plaintiffs to purchase one additional share of the common stock for $3 per share. The Units, the common shares and the warrant,

**EXHIBIT "A"**

collectively and individually constituted a "Securities" within the meaning of A.R.S. § 11-1801(26).

6.    Resolve Staffing, Inc., through its authorized agents, knowingly and falsely represented to the Plaintiffs, as a statement of fact, that a registration statement for the Securities had been filed with the United States Securities and Exchange Commission ("SEC") so as to permit the Plaintiffs to publicly sell the Securities and that final approval will be obtained before the end of the calendar year 2006.  The initial filing of the registration statement was not filed until April 27, 2007 and the no approval for public sale was ever obtained from the SEC.

7.    Plaintiffs were ordinary wage earners and neither of the Plaintiffs were and Accredited Investors within the meaning of the Securities Act of 1933, Rule 501(a)(6), Regulation D, which defines an Accredited Investors as an individual with "*income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year*". Plaintiffs were mislead and deceived into purchasing the 90,000 Units.  Plaintiffs  borrowed the purchase price and secured the loan with a mortgage on their residence.

8.    On October 10, 2006, Plaintiffs, using borrowed funds, paid $135,000.00 for the purchase of the 90,000 Units of Resolve Staffing, Inc. by wiring such funds to the bank account of Resolve Staffing, Inc. maintained by Fifth Third Bank in Cincinnati Ohio, all in accordance with written instructions given to the Plaintiffs by the Defendant.

**EXHIBIT "A"**

9.     In the course of the offer to sell and the sale of the Securities by Resolve Staffing, Inc. to the Plaintiffs, Defendant, Resolve Staffing, Inc. did the following:

(i)   offered to sell and did sell to the Plaintiffs 90,000 Units of the Securities of the Defendant for a price of $1.50 per Unit for a total of $135,000. Each Unit consisted of 90,000 shares of the common stock plus warrants of Resolve Staffing, Inc. all of which constituted Securities within the meaning of A.R.S. § 44-1801(26) (the "Securities"). Such Securities were non-exempt and were not registered nor authorized for sale in the State of Arizona or anywhere in the United States. The person acting on behalf of the Resolve Staffing, Inc. who offered to sell and who sold such Securities to the general public and to the Plaintiffs were authorized to do so by Resolve Staffing, Inc. and were not licensed to sell securities in the State of Arizona. The offer to sell and sale of the Securities to the Plaintiffs was unlawful and fraudulent.

(ii)     knowingly, intentionally and falsely and with the intent of inducing the Plaintiffs to purchase the Securities, represented that (1) the Securities were being registered under Regulation D and were exempt for registration, (2) that the Securities were in the process of being registered with the United States Securities and Exchange Commission so that the Plaintiffs could sell the Securities on an authorized stock exchange within a period of not more than 60 days after purchase, and (3) the Defendant was very strong financially when, in fact, the Defendant had never earned a profit, had a negative net worth and was in desperate need of cash.

(iii)     Engaged in a pattern of racketeering activity, namely: (a) committing intentional fraud in the purchase or sale of securities (A.R.S. § 13-2301(xviii); (b) intentionally sold

**EXHIBIT "A"**

1    unregistered securities (A.R.S. § 13-2301(xix) and (c) engaged in a scheme or artifice to

2    defraud (A.R.S. § 13-2301(xx)), and

3         (iv)    The pattern of racketeering activity by the Defendant included the sale of such

4    unregistered and non-exempt Securities to others in addition to the sales made to the Plaintiffs

5    such additional sales being made on September of 2006.

6

7         10.    As a direct and proximate cause of the fraud and illegal sale of unregistered and

8    nonexempt securities committed by the Defendant, Plaintiffs suffered financial loss of

9    $135,000.00 and also suffered extreme emotional distress, depression, anxiety, sleeplessness

10   and psychological damage.  The acts of the Defendant were outrageous, willful, beyond

11   civilized decency, motivated by an evil mind and calculated to enrich the Defendant without

12   any regard to the financial and emotional welfare of the Plaintiffs and warrant the imposition

13   of punitive damages.

14

15        11.    This action was commenced within the time period specified in A.R.S. § 44-

16   2004(B) namely, within two years after discovery of the fraudulent practice and sale of

17   unregistered and nonexempt securities on which the liability is based, or after discovery should

18   have been made by the exercise of reasonable diligence.

19

20        12.    Pursuant to A.R.S. § 13-2314.04(H), timely notice and a copy of the pleading in

21   this action was served on the Arizona Attorney General.

22        13.    Resolve Staffing, Inc. is an enterprise which acquired the $135,000.00 through

23   an offense included in the definition of racketeering in A.R.S. § 13-2301(D) and, pursuant to

24   A.R.S. § 13-2304.04(D)(6),  Resolve Staffing, Inc. is an involuntary trustee of a constructive

25

**EXHIBIT "A"**

1 | trust holding such funds, its proceeds and fruits in constructive trust for the benefit of the

2 | Plaintiffs.

3

### CONCLUSIONS OF LAW

4

5 | 14.      In connection with the offering and sale of the Securities by the Defendant to the

6 | Plaintiffs, the Defendant, RESOLVE STAFFING, INC., engaged in a fraudulent and unlawful

7 | practice with the meaning of A.R.S. § 44-1991 which practices by said Defendant included :

8 | (i)      knowingly entered into a plan and scheme to defraud the general public and the

9 | Plaintiffs specifically, and

10 | (ii)      knowingly made untrue statements of material facts and omitted to state material

11

12 | facts necessary in order to make the statements made, in the light of the circumstances under

13 | which they were made not misleading, and

14 | (iii)      knowingly and intentionally engaged in transactions, practices and course of

15 | business which operated as a fraud and deceit upon the general public and on the Plaintiffs in

16 | particular.

17 | 15.      Defendant knowingly, intentionally and purposefully engaged in a pattern of

18

19 | racketeering activity, namely: (i) committed intentional fraud in the purchase or sale of

20 | securities [A.R.S. § 13-2301(xviii)]; (ii) intentionally and knowingly sold unregistered

21 | securities [A.R.S. § 13-2301(xix)] and (iii) engaged in a scheme or artifice to defraud [A.R.S. §

22 | 13-2301(xx)] causing financial injury to the Plaintiffs in the sum of $135,000 plus pre-

23 | judgment interest which sum is to be trebled as provided by statute.

24

25

Judgment – Page 6 of 8

**EXHIBIT "A"**

16.    Defendant, Resolve Staffing, Inc. pursuant to A.R.S. § 13-2314.04(D)(6), is an involuntary trustee of $135,000.00 and Resolve Staffing, Inc. holds such funds, its proceeds and its fruits in constructive trust for the benefit of the Plaintiffs.

17.    The Acts of the Resolve Staffing, Inc.were (i) egregious, (ii) callous beyond civilized behavior, (iii) motivated by an evil mind and financial gain and (iv) in reckless disregard of the interests of the Plaintiffs justifying the imposition of compensatory damages and punitive damages.

## JUDGMENT

Wherefore,  Judgment is hereby entered in favor of the Plaintiffs, Steve Hillis and Diane Hillis and against the Defendant, RESOLVE STAFFING, INC. as follows:

A.    A money judgment in the aggregate sum of **$ 810,050.00** plus interest at the legal rate until paid, determined as  follows:

(i)    On Plaintiffs' claim for damages for Defendants Common Law Fraud, Consumer Fraud and Securities Fraud, compensatory damages for the emotional distress, anxiety, sleeplessness and aguish proximately caused by Defendant's unlawful and willful acts, in the sum of $ $50,000.00   plus punitive damages of $ 270,000.00  **for a total of $320,000.00.**

(ii)    On Plaintiffs claims of Racketeering damages pursuant to A.R.S. §13-2314.04 Compensatory damages of $135,000.00 plus prejudgment interest of $28,350, for a total of $163,350 which sum shall be trebled pursuant to A.R.S. §13-2413.04  **for a total of $ 490,050.00** plus interest at the legal rate until paid, and

**EXHIBIT "A"**

1

B.   In accordance with A.R.S. § 13-2304.4(D)(6), Resolve Staffing, Inc. is hereby

2

declared to be an involuntary trustee holding $135,000.00 in a constructive trust for the benefit

3

4

of the Plaintiffs, Steve Hillis and Diane Hillis.  Resolve Staffing, Inc is hereby ordered to

5

forthwith remit to Plaintiffs' legal counsel, Harry N. Stone, 3030 N. Third Street, Phoenix,

6

Arizona 85012 or such other manner of payment as may be directed, in writing by counsel,

7

Harry N. Stone the following sum:  the trust funds in the sum of $135,000.00 plus interest at

8

10% per annum from October 10, 2006 until fully paid. .

9

C.   Pursuant to Rule 54(b), Arizona Rules of Civil Procedure Court expressly

10

determines that there is no just for delay and directs the entry of this final judgment as to the

11

Defendant, Resolve Staffing, Inc.

12

13

DATED: *January 5, 2009*

14

15

_____

16

Judge/Commission

17

18

19

20

21

22

23

24

25

Judgment – Page 8 of 8

**EXHIBIT "A"**

**EXHIBIT "B"**

The following Table also sets forth the name of each person who is offering the resale of shares of Common Stock by this prospectus, the number of shares of Common Stock beneficially owned by each person, the number of shares of Common Stock that may be sold in this offering and the number of shares of Common Stock each person will own after the offering,

| Name | Shares of Common Stock Owned by Selling Shareholders | Shares of Common Stock Issuable Upon Exercise of Warrants | Percentage of Common Stock Owned Before the Offering (1) | Shares of Common Stock Included in Prospectus | Beneficial Ownership After the Offering (1)(2) | Percentage of Common Stock Owned After Offering (1)(2) |
|---|---|---|---|---|---|---|
| John R. Fox (3) | 250,000 | 665,000 | 4.55% | 915,000 | - | - |
| JRF Investments (4) | 50,000 | 100,000 | 0.77% | 150,000 | - | - |
| Ronald and Verna Bretshneider | 20,000 | 20,000 | 0.21% | 40,000 | - | - |
| Douglas Jacobson | 40,000 | 40,000 | 0.41% | 80,000 | - | - |
| Suzanne and Steve Athey | 20,000 | 40,000 | 0.31% | 60,000 | - | - |
| Rob Taylor | 30,000 | 30,000 | 0.31% | 60,000 | - | - |
| Grady Hillis | 40,000 | 105,000 | 0.74% | 145,000 | - | - |
| Tom Rich | 10,000 | 10,000 | 0.10% | 20,000 | - | - |
| Steven Hillis | 90,000 | 90,000 | 0.92% | 180,000 | - | - |
| Venatar Founders Fund (5) | 175,000 | 350,000 | 2.65% | 525,000 | - | - |
| Commerce Mercantile Bancorp LP (6) | 100,000 | 200,000 | 1.53% | 300,000 | - | - |
| Arrow Clocktower Global Fund (7) | 175,000 | 350,000 | 2.65% | 525,000 | - | - |
| **Totals** | **1,000,000** | **2,000,000** | **15.15%** | **3,000,000** | **-** | **-** |

(1) The number and percentage of shares beneficially owned is determined in accordance with Rule 13d-3 of the Securities Exchange Act of 1934, and the information is not necessarily indicative of beneficial ownership for any other purpose. Under such rule, beneficial ownership includes any shares as to which the Selling Shareholder has sole or shared voting power or investment power and also any shares the Selling Shareholder has the right to acquire within 60 days.

(2) Assumes that all shares of Common Stock offered hereby will be sold.

(3) Includes shares and warrants owned by John R. Fox individually (50,000 shares and 465,000 warrants), JRF Investments IV(30,000 shares and 30,000 warrant), V (70,000 shares and 70,000 warrants), and VI (100,000 shares and 100,000 warrant), which are managed by John R. Fox.

(4) JRF Investments is managed by Geoff Shotton

(5) Venatar Founders Fund is managed by Brandon Osten.

(6) Commerce Mercantile Bancorp LP is managed by John Cundari.

(7) Arrow Clocktower Global Fund is managed by David Benwell.

## SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT

The following table sets forth, as of April 25, 2007 information regarding the beneficial ownership of our Common Stock by each of the officers, directors and principal shareholders. As of April 25, 2007, there were 19,428,511 shares of our Common Stock outstanding.

**EXHIBIT "B"**

**EXHIBIT "C"**

'26/2006  14:46     2147050323                  JRF MGMT                              PAGE  01

TO: Steve Hillis
FROM: John R Fox

Enclosed are the official documents to FINISH the deal for the Private Placement (The PIPE) that you are buying with me and some others. You need to fill out these papers and return them to the company ASAP.

## By ASAP I mean today if possible and tomorrow at the latest.

You ARE a buyer of shares. That's the good news. It is firm, and your check is being held (it has not been cashed yet) for the closing of escrow. That closing should occur this Friday. But, we need these papers sent back before the deal is finalized. Without these papers you shall be taken OUT of the deal, and LOSE the opportunity that you have. So, I again say fill them out NOW, and get them back.

## They need to be faxed to Don Quarterman at 813-354-4795.

The first document is the "Securities Subscription Agreement". On Page 1 you need to put your name and address (in a very tight area. Use two lines in the one space) near the top where you see the blank line. This is in the introduction paragraph, since it is before paragraph "1". Two lines later is the number of shares you are purchasing. In your case, it was 90000 shares. Then another blank, for the dollar amount invested. Your amount is $135,000 - oo

Moving on to paragraph #1. Again you fill in 90,000 shares and $135,000. Then there is nothing to do until page 6, where you sign where marked.

Page 7 is dealing with the "warrants", and you sign where marked and put in your SS number.

Page 8 is for the warrants that you have. You need to fill in as follows:
  90,000  warrants at $2
      0    warrants at $3

Page 10 is for when you EXERCISE the warrants. For now you SAVE this page. If you lose it I have extras, but for now you save it and we use it when (if) we exercise. That's in the future and I SHALL call you at that time to talk about it.

That's it. This deal is put to bed, except for your reply. Please work on it, and then we move forward with the stock and the warrants. I'll keep you updated as I get more information.

John R Fox

# EXHIBIT "C"

09/26/2006  14:46    2147050323

JRF MGMT

PAGE  02

# SECURITIES SUBSCRIPTION AGREEMENT

THIS SECURITIES SUBSCRIPTION AGREEMENT, dated as of September 26, 2006 ("Agreement"), is executed in reliance upon the exemption from registration afforded by Rule 506 promulgated under Regulation D by the Securities and Exchange Commission ("SEC"), under the Securities Act of 1933 ("Act"), as amended and/or under any other available exemption from registration under the Act. Capitalized terms used herein and not defined shall have the meanings given to them in Rule 506 and Regulation D.

This Agreement has been executed and entered into by and between _STEVEN Ray Hillis_ _9006 W. Salter Dr. Peoria Az 85382_ ("Buyer"), to purchase certain securities of the Seller consisting of units comprised of one share of common stock and two warrants to purchase additional shares of common stock ("Units"). Buyer hereby intends to subscribe to purchase _90,000_ Units from Resolve Staffing, Inc., a corporation organized under the laws of Nevada, with executive offices at 3235 Omni Drive, Cincinnati, Ohio 45245 (the "Seller") at a purchase price of $1.50 per Unit, with the aggregate purchase price equaling $ _135,000.00_ Buyer hereby represents and warrants to, and agrees with Seller:

THE SECURITIES OFFERED HEREBY HAVE NOT BEEN REGISTERED WITH THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION OR THE SECURITIES COMMISSION OF ANY STATE AND ARE BEING ISSUED PURSUANT TO AN EXEMPTION FROM REGISTRATION PROVIDED BY SECTION 3(b) OR SECTION 18 OF THE SECURITIES ACT OF 1933, AS AMENDED, AND THE RULES AND REGULATIONS PROMULGATED THEREUNDER (THE "1933 ACT"), AND RULE 506 OF REGULATION D PROMULGATED THEREUNDER.

THE SECURITIES PURCHASED UNDER THIS AGREEMENT WILL BEAR A RESTRICTIVE LEGEND REFLECTING THAT THE SHARES OF COMMON STOCK THAT ARE THE SUBJECT OF THIS AGREEMENT ARE "RESTRICTED SECURITIES" WITHIN THE DEFINITION OF REGULATION D OF THE 1933 ACT.

1. Agreement to Subscribe: Purchase Price.

(a) Subscription. The undersigned Buyer hereby subscribes for and agrees to purchase the Seller's Units consisting of shares of Seller's common stock, par value $.0001 per share ("Common Stock"), in the amount of _90,000_ shares at a price of $1.50 per share for a total aggregate purchase price of $ _135,000.00_ ("Purchase Price"), which Units also include certain Warrants as set forth in that certain Warrant Agreement of even date herewith that has been entered into by and between the Seller and the Buyer.

(b) Payment   The Purchase Price for the Units shall be delivered to the Seller on the date of this Agreement, against the delivery to the Buyer of duly authorized shares of the Seller's Common Stock, in the amount set forth above in Section 1(a) of this Agreement and upon duly authorized delivery of the Warrant Agreement and Warrant Certificates of even date herewith.

(c) Closing.  Subject to the satisfaction of the conditions set forth in Sections 7, 8 and 11 below, the Closing of the transactions contemplated by this Agreement shall take place ("Closing Date") when (i) Seller delivers the Common Stock to the Buyer, (ii) Seller executes this Agreement, the Warrant Agreement and issues the Warrant Certificates and any other transaction documents, including appropriate resolutions of its Board of Directors, and (iii) Buyer pays the Purchase Price for the Units as shown in Section 1(a) of this Agreement.

· Buyer Representations and Covenants:

) connection with the purchase and sale of the Units, Buyer represents and warrants to, and covenants and agrees with Seller as illows:

(a) Buyer is not, and on the closing date will not be, an affiliate of Seller;



**EXHIBIT**

(b) Buyer is an "accredited investor" as defined in Rule 501 of Regulation D promulgated under the 1933 Act and under Section 18 of the Act, and is purchasing the Units and the securities comprising the Units for his own account and Buyer is qualified to purchase the Units under the laws of the State of Buyer's residence.;

(c) All offers and sales of any of the Units by Buyer shall be made in compliance with any applicable securities laws of any applicable jurisdiction and in accordance with Rule 506, as applicable, of Regulation D or pursuant to any other available exemption from registration;

(d) Buyer understand that the Units, the Common Stock, the Warrant Agreement, Warrant Certificates and Warrant Shares are not registered under the 1933 Act and are being offered and sold to the Buyer in reliance on specific exemptions from the registration requirements of Federal and State securities laws, and that Seller is relying upon the truth and accuracy of the representations, warranties, agreements, acknowledgments and understandings of Buyer set forth herein and in all other collateral documents required by this transaction in order to determine the applicability of such exemptions and the suitability of Buyer to acquire the Units;

(e) Buyer shall comply with Rule 506 promulgated under Regulation D;

(f) Buyer has the full right, power and authority to enter into this Agreement and to consummate the transaction contemplated herein. This Agreement has been duly authorized, validly executed and delivered on behalf of Buyer and is a valid and binding agreement in accordance with its terms, subject to general principles of equity and to bankruptcy or other laws affecting the enforcement of creditors' rights generally;

(g) As to any Buyer that is a corporations, the execution and delivery of this Agreement and the consummation of the purchase of the Units and the transactions contemplated by this Agreement do not and will not conflict with or result in a breach by Buyer of any of the terms or provisions of, or constitute a default under, the articles of incorporation or by-laws (or similar constitutive documents) of Buyer or any indenture, mortgage, deed of trust, or other material agreement or instrument to which Buyer is a party or by which it or any of its properties or assets are bound, or any existing applicable law, rule or regulation of the United States or any State thereof or any applicable decree, judgment or order of any Federal or State court, Federal or State regulatory body, administrative agency or other United States governmental body having jurisdiction over Buyer or any of its properties or assets;

(h) All invitations, offers and sales of or in respect of, any of the Units, by Buyer and any distribution by Buyer of any documents relating to any invitation, offer or sale by them of any of the Units will be in compliance with applicable laws and regulations, will be made in such a manner that no prospectus need be filed and no other filing need be made by Seller with any regulatory authority or stock exchange in any country or any political sub-division of any country, and Buyer will make no misrepresentations nor omissions of material fact in the invitation, offer or resale of the Units;

(i) The Buyer (or others for whom it is contracting hereunder) has been advised to consult his own legal and tax advisors with respect to applicable resale restrictions and applicable tax considerations and he (or others for whom it is contracting hereunder) is solely responsible (and the Seller is not in any way responsible) for compliance with applicable resale restrictions and applicable tax legislation;

(j) Buyer understands that no Federal or State or foreign government agency has passed on or made any recommendation or endorsement of an investment in the Units;

(k) Buyer has had an opportunity to receive and review all material information and financial data and to discuss with the officers of Seller, all matters relating to the securities, financial condition, operations and prospects of Seller and any questions raised by Buyer have been answered to Buyer's satisfaction.

(l) Buyer acknowledges that the purchase of the Units involves a high degree of risk. Buyer has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of purchasing the Units. Buyer

# EXHIBIT "C"

understands that the Units are not being registered under the 1933 Act, or under any state securities laws, and therefore Buyer must bear the economic risk of this investment for an indefinite period of time;

(m) The Buyer is not a "10-percent Shareholder" (as defined in Section 871(h)(3)(B) of the U.S. Internal Revenue Code) of Seller; and

3. Seller Representations and Covenants.

(a) Seller is a corporation duly organized and validly existing under the laws of the State of Nevada and is in good standing under such laws with its principal executive office located in the State of Ohio. The Seller has all requisite corporate power and authority to own, lease and operate its properties and assets, and to carry on its business as presently conducted. The Seller is qualified to do business as a foreign corporation in each jurisdiction in which the ownership of its property or the nature of its business requires such qualification, except where failure to so qualify would not have a material adverse effect on the Seller.

(b) There are 50,000,000 shares of Seller's Common Stock, $.0001 par value per share ("Common Stock") authorized and approximately 16,000,000 shares outstanding as of September 26, 2006. All issued and outstanding shares of Common Stock have been authorized and validly issued and are fully paid and non-assessable. There are no shares of preferred stock outstanding at the date of this Agreement. There are 851,320 warrants with a strike price of $.75. The warrants expire in June, 2007.

(c) The execution and delivery of this Agreement do not, and the consummation of the transactions contemplated hereby will not, conflict with, or result in any violation of, or default (with or without notice or lapse of time, or both), or give rise to a right of termination, cancellation or acceleration of any obligation or to a loss of a material benefit, under, any provision of the Articles of Incorporation, and any amendments thereto, By-Laws, Stockholders Agreements and any amendments thereto of the Seller or any material mortgage, indenture, lease or other agreement or instrument, permit, concession, franchise, license, judgment, order, decree, statute, law ordinance, rule or regulation applicable to the Seller, its properties or assets. There is no action, suit or proceeding pending, or to the knowledge of the Seller, threatened against the Seller, before any court or arbitrator or any government body, agency or official, which would have a material adverse affect on Seller=s operations or financial condition.

(d) The Seller is subject to the reporting requirements of Sections 13 or 15(d) of the Securities and Exchange Act. The securities that comprise the Units when issued, will be issued in compliance with all applicable U.S. federal and state securities laws. The execution and delivery by the Seller of this Agreement and the issuance of the Common Stock will not contravene or constitute a default under any provision of applicable law or regulation. The Seller is in compliance with and conforms with, and will continue to comply with and conform with, all securities laws, state and federal, ordinances, rules, regulations, orders, restrictions and all other legal requirements of any domestic or foreign government or any instrumentality thereof having jurisdiction over the conduct of its businesses or the ownership of its properties, including but not limited to all laws concerning investor relations, public relations, disclosures under the securities laws and broker-dealers statutes and laws.

(e) There is no material fact known to the Seller that has not been publicly disclosed by the Seller or disclosed in writing to the Buyer which could reasonably be expected to have a material adverse effect on the condition (financial or otherwise) or on the earnings, business affairs, properties or assets of the Seller, or could reasonably be expected to materially and adversely affect the ability of the Seller to perform its obligations pursuant to this Agreement. The information furnished by the Seller to Buyer for purposes of or in connection with this Agreement or any transaction contemplated hereby does not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements contained therein, in light of the circumstances under which they are made, not misleading.

(f) No consent, approval or authorization of or designation, declaration or filing with any governmental authority on the part of the Seller is required in connection with the valid execution and delivery of this Agreement, or the offer, sale or issuance of the Common Stock, Warrants or Warrant Shares, or the consummation of any other transaction contemplated hereby, except the filing with the SEC and certain other states of a Form D Notice of Sale of Securities.

-3-

**EXHIBIT "C"**

(g) There is no action, proceeding or investigation pending, or to the Seller's knowledge, threatened, against the Seller which might result, either individually or in the aggregate, in any material adverse change in the business, prospects, conditions, affairs or operations of the Seller. The Seller is not a party to or subject to the provisions of any order, writ, injunction, judgment or decree of any court or government agency or instrumentality. There is no action, suit proceeding or investigation by the Seller currently pending or which the Seller intends to initiate. The SEC has not issued any order suspending trading in the Seller's Common Stock and the Seller is not under investigation by the SEC or the National Association of Securities Dealers, and there are no proceedings pending or threatened before either regulatory body.

(h) There are no other material outstanding debt or equity securities presently convertible into Common Stock.

(j) The issuance, sale and delivery of the Units and the securities comprising the Units have been duly authorized by all required corporate action on the part of the Seller, and when issued, sold and delivered in accordance with the terms hereof and thereof for the consideration expressed herein and therein, will be duly and validly issued, fully paid and non-assessable. There are no pre-emptive rights of any shareholder of Seller.

(k) This Agreement has been duly authorized, validly executed and delivered on behalf of Seller and is a valid and binding agreement in accordance with its terms, subject to general principles of equity and to bankruptcy or other laws affecting the enforcement of creditors' rights generally. The Seller has all requisite right, power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby. All corporate action on the part of the Seller, its directors and shareholders necessary for the authorization, execution, delivery and performance of this Agreement and the Common Stock has been taken. Upon their issuance to the Buyer, the Common Stock will be validly issued and non-assessable, and will be free of any liens or encumbrances.

4. **Exemption; Reliance on Representations.** Buyer understands that the offer and sale of the Units and the securities comprising the Units are not being registered under the 1933 Act. Seller and Buyer are relying on the rules governing offers and sales made pursuant to Rule 506 promulgated under Regulation D as well as any other available exemption from registration.

5. **Delivery Instructions.** The shares of Common Stock being purchased as Units offered by the Seller shall be delivered to the Buyer, and the Purchase Price, shall be delivered to the Seller.

6. **Conditions To Seller's Obligation To Sell.** Seller's obligation to sell the Units is conditioned upon:

(a) The receipt and acceptance by Seller of this Agreement as executed by Buyer.

(b) All of the representations and warranties of the Buyer contained in this Agreement shall be true and correct on the Closing Date with the same force and effect as if made on and as of the Closing Date. The Buyer shall have performed or complied with all agreements and satisfied all conditions on its part to be performed, complied with or satisfied at or prior to the Closing Date.

(c) No order asserting that the transactions contemplated by this Agreement are subject to the registration requirements of the Act shall have been issued, and no proceedings for that purpose shall have been commenced or shall be pending or, to the knowledge of the Seller, be contemplated. No stop order suspending the sale of the Common Stock or Common Stock shall have been issued, and no proceedings for that purpose shall have been commenced or shall be pending or, to the knowledge of the Seller, be contemplated.

7. **Conditions To Buyer' Obligation To Purchase.** Buyer' obligation to purchase the Units is conditioned upon:

(a) The confirmation of receipt and acceptance by Seller of this Agreement as evidenced by execution of this Agreement by a duly authorized officer of Seller.

(b) Delivery of the Common Stock, the Warrant Agreement and the Warrant Certificates to the Buyer.

**EXHIBIT "C"**

**8. Miscellaneous.**

(a) Entire Agreement. This Agreement, constitutes the entire agreement between the parties, and neither party shall be liable or bound to the other in any manner by any warranties, representations or covenants except as specifically set forth herein. Any previous agreement among the parties related to the transactions described herein is superseded hereby. The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the restrictive successors and assigns of the parties hereto. Nothing in this Agreement, express or implied, is intended to confer upon any party, other than the parties hereto, and their respective successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement, except as expressly provided herein.

(b) Survival. All representations and warranties contained in this Agreement by Seller and Buyer shall survive the closing of the transactions contemplated by this Agreement.

(c) Governing Law. This Agreement shall be construed in accordance with the laws of Nevada applicable to contracts made and wholly to be performed within the State of Nevada and shall be binding upon the successors and assigns of each party hereto. Buyer and Seller hereby mutually waive trial by jury and consent to exclusive jurisdiction and venue in the courts of the State of Ohio. At the Seller's election, any dispute between the parties may be arbitrated rather than litigated in the courts, before the arbitration board of the American Arbitration Association in Ohio and pursuant to its rules. Upon demand made by the Seller to the Buyer or any one of them, such Buyer(s) agree to submit to and participate in such arbitration. This Agreement may be executed in counterparts, and the facsimile transmission of an executed counterpart to this Agreement shall be effective as an original.

(d) Seller Indemnification. Seller agrees to indemnify and hold Buyer harmless from any and all claims, damages and liabilities arising from Seller's breach of its representations and/or covenants set forth herein.

(e) Buyer' Indemnification. Buyer agrees to indemnify and hold Seller harmless from any and all claims, damages and liabilities arising from Buyer' breach of their representations and warranties set forth in this Agreement.

(f) Form D. Seller shall filed a Form D with the SEC and all filings required by any applicable state securities regulatory agencies upon the Closing of this transaction.

(h) Notices. All notices, requests, consents and other communications hereunder shall be in writing, shall be delivered by hand or sent by Fedex for next day delivery. Each such notice or other communication shall for all purposes of this Escrow Agreement be treated as effective or having been given when delivered, if delivered personally, or, if sent by overnight express mail service, 1 day after the same has been deposited with the Fedex. All such notices must also be sent by facsimile on the same day to the parties as follows:

If to Seller:    Resolve Staffing, Inc.
                3235 Omni Drive
                Cincinnati, OH 45245
                Attn: Ron Heineman, President
                Phone: 800-894-4250
                Fax: 513-943-4908

If to Buyer:    See Page 1 of this Agreement

(i) Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of the date first set forth above.

**EXHIBIT "C"**

<u>Official Signatory of Seller</u>:

By: _____
    Ron Heineman, President

<u>Signatory of Buyer</u>:

By: X _Steven Ray Hillis_

**EXHIBIT "C"**

20. **Severability.** If any provision of this Agreement shall be held to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision of this Agreement.

21. **Captions.** The caption headings of the Sections of this Agreement are for convenience of reference only and are not intended, nor should they be construed as, a part of this Agreement and shall be given no substantive effect.

22. **Benefits of this Agreement.** Nothing in this Agreement shall be construed to give to any person or corporation other than the Company and Holder any legal or equitable right, remedy or claim under this Agreement; and this Agreement shall be for the sole and exclusive benefit of the Company and Holder.

23. **Counterparts.** This Agreement may be executed in any number of counterparts and each of such counterparts shall for all purposes be deemed to be an original, and such counterparts shall together constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have caused this Warrant Agreement to be duly executed, as of the day and year first above written.


Very truly yours,


Resolve Staffing, Inc.



By: _____
    Ron Heineman, President

ACCEPTED AND AGREED TO: HOLDER:

X _Steven Ray Hillis_ _____
{ Name: _STEVEN Ray Hillis_
{ Address: _9006 W. Salter Drive Peoria Az. 85382_
{ Social Security/Tax I.D. No.: _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_

7

**EXHIBIT "C"**

**Resolve Staffing, Inc.**
**SCHEDULE I**

| Investor (Name) | Number of Warrant Shares | Exercise Price |
|---|---|---|
| STEVEN Ray Hillis | 90,000 | $2.00 |
| | 0 | $3.00 |

**EXHIBIT "C"**

8

## [FORM OF ELECTION TO EXERCISE]

The undersigned hereby irrevocably elects to exercise the right, represented by this Warrant Certificate, to purchase _____ Common Shares and herewith tenders in payment for such securities a certified check or official bank check payable to the order of Resolve Staffing, Inc. in the amount of $_____, all in accordance with the terms of Section 4 of the Warrant Agreement dated as of September 26, 2006, between Resolve Staffing, Inc. and the undersigned (or its assignor). The undersigned requests that a certificate for such securities be registered in the name of _____ whose address is _____ and that such Certificate be delivered to whose address is _____.

Dated:

Signature:_____       SSN:_____
(Signature must conform in all respects to name of holder as specified on the face of the Warrant Certificate.) (Insert Social Security or Other Identifying Number of Holder)

### [FORM OF ASSIGNMENT]
(To be executed by the registered holder if such holder desires to transfer the Warrant Certificate.)

FOR VALUE RECEIVED _____ hereby sells, assigns and transfers unto (Please print name and address of transferee) this Warrant Certificate, together with all right, title and interest therein, and does hereby irrevocably constitute and appoint Attorney, to transfer the within Warrant Certificate on the books of the within-named Company, with full power of substitution.

Dated: _____

Signature:_____       SSN:_____
(Signature must conform in all respects to name of holder as specified on the face of the Warrant Certificate) (Insert Social Security or Other Identifying Number of Assignee)

# EXHIBIT "C"

**EXHIBIT "D"**

S-1/A 1 forms1a.htm FORM S-1A

**REGISTRATION STATEMENT NO. 333-140487**

**AS FILED WITH THE SECURITIES AND EXCHANGE COMMISSION ON April 27, 2007**

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**FORM S-1/A**
**Amendment 1**

**REGISTRATION STATEMENT UNDER THE SECURITIES ACT OF 1933**

**Resolve Staffing, Inc.**
(NAME OF SMALL BUSINESS ISSUER IN ITS CHARTER)

| Nevada | 7363 | 33-0850639 |
|---|---|---|
| (State or Other Jurisdiction of Incorporation or Organization) | (Primary Standard Industrial Classification Code Number) | (I.R.S. Employer Identification Number) |

Resolve Staffing, Inc.
3235 Omni Dr.
Cincinnati, OH 45245
(800) 894-4250
(Address and Telephone Number of Principal Executive Offices and Principal Place of Business)

Jed Block
State Agent & Transfer Syndicate, Inc.
202 North Curry Street
Carson City, NV 89703
(800) 253-1013
(Name, Address, and Telephone Number of Agent for Service)

COPIES TO:

Gregory Bartko, Esq.
Law Office of Gregory Bartko
3475 Lenox Rd., Suite 400
Atlanta, GA 30326
Phone 404-238-0550
Facsimile 404-238-0551

**APPROXIMATE DATE OF COMMENCEMENT OF PROPOSED SALE TO THE PUBLIC:**
As soon as practicable after the effective date of this Registration Statement.

If any of the securities being registered on this form are to be offered on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933, please check the following box: []

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, please check the following box and list the Securities Act registration statement number of the earlier effective registration

# EXHIBIT "D"

statement for the same offering. [ ]

If this Form is a post-effective amendment filed pursuant to Rule 462(c) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. [ ]

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. [ ]

If delivery of the prospectus is expected to be made pursuant to Rule 434, please check the following box. [ ]

Page - 1

EXHIBIT "D"

## CALCULATION OF REGISTRATION FEE

| Title of Each Class of Security to be Registered | Amount to be Registered | Proposed Maximum Offering Price Per Share (1) | Proposed Maximum Aggregate Offering Price | Amount of Registration Fee |
|---|---|---|---|---|
| Shares of Common Stock, $0.0001 par value per share(1); | 1,000,000 | $1.50 | $1,500,000.00 | $160.50 |
| Shares of Common Stock issuable upon the exercise of outstanding warrants to purchase shares of common stock, $0.0001 par value per share (1) (2); | 1,000,000 | $2.00 | $2,000,000.00 | $214.00 |
| Shares of Common Stock issuable upon the exercise of outstanding warrants to purchase shares of common stock, $0.0001 par value per share (1) (2); | 1,000,000 | $3.00 | $3,000,000.00 | $321.01 |
| Shares of Common Stock issuable by the Company, par value $0.0001 per share (1). | 3,000,000 | $3.00 | $9,000,000.00 | $963.02 |
| **Total (3)** | **6,000,000** | | **$15,500,000.00** | **$1,658.53 (4)** |

(1) Estimated solely for purposes of calculating the registration fee pursuant to Rule 457(c) under the Securities Act of 1933, as amended ("Securities Act"). The registration fee covering the shares of Common Stock offered to the public pursuant to Rule 415, is calculated based upon the average high and low prices of the Common Stock as reported on the OTCBB on January 31, 2007.

(2) Represents shares of our Common Stock issuable upon the possible excercise of warrants issued by us pursuant to a private placement on September 26, 2006. The Company agreed to issue 1,000,000 shares of restricted common stock to certain accredited investors, for an aggregate consideration of $1,500,000 ($1.50 per unit). In addition, the investors received a warrant to purchase additional shares of common stock at $2.00 and a warrant to purchase additional shares of common stock at $3.00. The shares of common stock acquired by these investors, including the warrant shares, have registration rights associated with them. Additional information can be found in the footnotes to the audited financial statements included in this document.

(3) Represents 24.6% of the total common stock to be outstanding after the offering, assuming full exercise of the outstanding Warrants and the total sale of shares of Common Stock.

(4) Filing Fee previously paid

**THE REGISTRANT HEREBY AMENDS THIS REGISTRATION STATEMENT ON SUCH DATE OR DATES AS MAY BE NECESSARY TO DELAY ITS EFFECTIVE DATE UNTIL THE REGISTRANT SHALL FILE A FURTHER AMENDMENT WHICH SPECIFICALLY STATES THAT THIS REGISTRATION STATEMENT SHALL THEREAFTER BECOME EFFECTIVE IN ACCORDANCE WITH SECTION 8(a) OF THE SECURITIES ACT OF 1933 OR UNTIL THIS REGISTRATION STATEMENT SHALL BECOME EFFECTIVE ON SUCH DATE AS THE SECURITIES AND EXCHANGE COMMISSION, ACTING PURSUANT TO SAID SECTION 8(a), MAY DETERMINE.**

The information in this prospectus is not complete and may be changed. We may not sell these securities until the registration statement filed with the Securities and Exchange Commission is effective. This prospectus is not an offer to sell these securities and is not soliciting an offer to buy these securities in any jurisdiction where the offer or sale is not permitted.

Investing in our Common Stock involves significant risks. See "Risk Factors" to read about factors you should consider before buying shares of our Common Stock.

# EXHIBIT "D"

Neither the U.S. Securities and Exchange Commission nor any other regulatory body has approved or disapproved of these securities or passed upon the adequacy or accuracy of this prospectus. Any representation to the contrary is a criminal offense.

**SUBJECT TO COMPLETION, DATED APRIL 27, 2007**

**The information in this prospectus is not complete and may be changed. These securities may not be sold until the registration statement filed with the Securities and Exchange Commission is declared effective. This prospectus is not an offer to sell these securities and is not soliciting an offer to buy these securities in any state where the offer or sale is not permitted.**

Page - 2

**EXHIBIT "D"**

**PREMILINARY PROSPECTUS**
**(Subject to completion)**
**RESOLVE STAFFING, INC.**

**6,000,000 Shares**
**Common Stock**
**par value $0.0001 per share**

Resolve Staffing, Inc. ("Resolve" or the "Company"), headquartered in Cincinnati, Ohio, is a national provider of outsourced human resource services with approximately 74 offices reaching from California to New York. Resolve provides a full range of supplemental staffing and outsourced solutions, including solutions for temporary, temporary-to-hire, or direct hire staffing in the medical, truck driver, clerical, office administration, customer service, professional and light industrial categories. This prospectus relates to the sale of 6,000,000 shares of Resolve Staffing's Common Stock, $.0001 par value per share ("Common Stock"). The registration and sale of the Common Stock is in connection with:

- Up to 3,000,000 shares of Common Stock to be offered by the Registrant.
- The resale, by certain selling shareholders ("Selling Shareholders") of up to 1,000,000 shares of the Company's Common Stock; and
- Up to 2,000,000 shares of Common Stock, issuable to the Selling Shareholders upon the exercise of outstanding common stock purchase warrants ("Warrants").

The Selling Shareholders may sell Common Stock from time-to-time in the principal market on which the Company's stock is traded at the prevailing market price or in negotiated transactions. The Company's Common Stock is registered under Section 12(g) of the Securities Exchange Act of 1934 and is quoted on the Over-The-Counter Bulletin Board ("OTCBB") maintained by the National Association of Securities Dealers, Inc. under the trading symbol "RSFF." The most recent reported sales price per share of the Company's Common Stock, as reported by the OTCBB on April 23, 2007 was $1.58.

**INVESTING IN THE COMPANY'S COMMON STOCK INVOLVES SIGNIFICANT RISKS. SEE "RISK FACTORS" BEGINNING ON PAGE 9 OF THIS PROSPECTUS.**

**NEITHER THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("COMMISSIONS") NOR ANY STATE SECURITIES COMMISSION HAS APPROVED OR DISAPPROVED THESE SECURITIES OR DETERMINED IF THIS PROSPECTUS IS TRUTHFUL OR COMPLETE. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.**

**THE INFORMATION IN THIS PROSPECTUS IS NOT COMPLETE AND MAY BE CHANGED. THIS PROSPECTUS IS INCLUDED IN A REGISTRATION STATEMENT THAT WAS FILED BY RESOLVE STAFFING, INC. WITH THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION. THE SELLING SHAREHOLDERS MAY NOT SELL THESE SECURITIES UNTIL THE REGISTRATION STATEMENT BECOMES EFFECTIVE BY ORDER OF THE COMMISSION. THIS PROSPECTUS IS NOT AN OFFER TO SELL THESE SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY THESE SECURITIES IN ANY STATE WHERE THE OFFER OR SALE IS NOT PERMITTED.**

| | Price Per Share | Total |
|---|---|---|
| Public offering price | $ | $ |
| Proceeds to us, before expenses | $ | $ |

The date of this prospectus is April 27, 2007

**EXHIBIT "D"**

Case 2:09-cv-00073-DGC   Document 1   Filed 01/12/09   Page 42 of 47

Page - 3

**EXHIBIT "D"**

**EXHIBIT "E"**

**EXHIBIT "I"**
**[FORM OF NEW WARRANT CERTIFICATE]**

THE WARRANTS REPRESENTED BY THIS CERTIFICATE AND THE OTHER SECURITIES ISSUABLE UPON EXERCISE THEREOF MAY NOT BE OFFERED OR SOLD EXCEPT PURSUANT TO (i) AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT") (ii) TO THE EXTENT APPLICABLE, RULE 144 UNDER THE ACT (OR ANY SIMILAR RULE UNDER THE ACT RELATING TO THE DISPOSITION OF SECURITIES), OR (iii) AN OPINION OF COUNSEL, IF SUCH OPINION SHALL BE REASONABLY SATISFACTORY TO COUNSEL FOR THE ISSUER, THAT AN EXEMPTION FROM REGISTRATION UNDER THE ACT IS AVAILABLE. EXERCISABLE FROM OCTOBER 1, 2006 UNTIL 5:30 P.M., NEW YORK TIME, SEPTEMBER 30, 2009.

**NEW WARRANT CERTIFICATE**
**Warrant A-1**

This New Warrant Certificate certifies that Steven Hillis, or his/her/its registered assign(s) ("Holder"), is the registered holder of 90,000 Warrants to purchase initially at any time from October 1, 2006, until 5:30 p.m. New York time on September 30, 2009 ("Expiration Date"), up to 90,000 fully-paid and non-assessable shares of common stock, par value $.0001 per share ("Common Shares") of Resolve Staffing, Inc., a Nevada corporation (the "Company"), at an initial exercise price, subject to adjustment in certain events (the "Exercise Price"), equal to the prices per share as shown on Schedule "A" hereof, which is incorporated herein by reference, per Common Share, upon surrender of this New Warrant Certificate and payment of the initial exercise price at an office or agency of the Company, but subject to the conditions set forth herein and in the Warrant Amendment And Exchange Agreement dated as of the date hereof between the Company and Holder ("Amended Warrant Agreement"). Payment of the Exercise Price shall be made by certified check or official bank check payable to the order of the Company. No New Warrant may be exercised after 5:30 p.m., New York time, on the Expiration Date, at which time all New Warrants evidenced hereby, unless exercised prior thereto, shall thereafter become void. The New Warrants evidenced by this any New Warrant Certificate are part of a duly authorized issue of New Warrants issued pursuant to the Amended Warrant Agreement, which Amended Warrant Agreement is hereby incorporated by reference in and made a part of this instrument and is hereby referred to for a description of the rights, limitation of rights, obligations, duties and immunities thereunder of the Company and the Holder (the word "Holder" meaning the registered holder) of the New Warrants. The Amended Warrant Agreement provides that upon the occurrence of certain events the Exercise Price and the type and/or number of the Company's securities issuable thereupon may, subject to certain conditions, be adjusted. In such event, the Company will, at the request of the Holder, issue a substitute New Warrant Certificate evidencing the adjustment in the Exercise Price and the number and/or type of securities issuable upon the exercise of the New Warrants; provided, however, that the failure of the Company to issue such substituted New Warrant Certificate shall not in any way change, alter, or otherwise impair, the rights of the holder as set forth in the New Warrant Agreement. Upon due presentment for registration of transfer of this New Warrant Certificate at an office or agency of the Company, a New Warrant Certificate or New Warrant Certificates of like tenor and evidencing in the aggregate a like number of New Warrants shall be issued to the transferee(s) in exchange for this New Warrant Certificate, subject to the limitations provided herein and in the Warrant Agreement as modified by the Amended Warrant Agreement, without any charge except for any tax or other governmental charge imposed in connection with such transfer. Upon the exercise of less than all of the New Warrants evidenced by this Certificate, the Company shall forthwith issue to the Holder hereof a New Warrant Certificate representing such number of unexercised New Warrants. The Company may deem and treat the registered Holder(s) hereof as the absolute owner(s) of this New Warrant Certificate (notwithstanding any notation of ownership or

10

**EXHIBIT "E"**

other writing hereon made by anyone), for the purpose of any exercise hereof, and of any distribution to the Holder(s) hereof, and for all other purposes, and the Company shall not be affected by any notice to the contrary. All terms used in this New Warrant Certificate which are defined in the New Warrant Agreement shall have the meanings assigned to them in the Amended Warrant Agreement.

IN WITNESS WHEREOF, the Company has caused this New Warrant Certificate to be duly executed.

Dated as of September ___, 2007.

**Resolve Staffing, Inc.**

**By: Ron Heineman, President**
**President and Chief Executive Officer**

11

**EXHIBIT "E"**

## SCHEDULE "A"
## NEW WARRANT CERTIFICATE

Exercise Price Per Amended Warrant Agreement...................$1.25 (50% of the Warrants)

Exercise Price Per Amended Warrant Agreement...................$1.75 (50% of the Warrants)

**EXHIBIT "E"**

**[FORM OF ELECTION TO EXERCISE]**

   The undersigned hereby irrevocably elects to exercise the right, represented by this New Warrant Certificate, to purchase _____ shares of the Common Stock of the Company, par value $0.0001 per share,  and herewith tenders in payment for such securities a certified check or official bank check payable to the order of Resolve Staffing, Inc. in the amount of $_____, all in accordance with the terms of the Warrant Agreement as amended and superseded by the Amended Warrant Agreement, the later being dated as of September ___, 2007, between Resolve Staffing, Inc. and the undersigned (or his/her assignor). The undersigned requests that a certificate for such securities be registered in the name of _____ whose address is _____ and that such Certificate be delivered to whose address is _____.

Dated: _____.

Signature:_____          SSN:_____

(Signature must conform in all respects to name of holder as specified on the face of the New Warrant Certificate.) (Insert Social Security or Other Identifying Number of Holder)

**[FORM OF ASSIGNMENT]**

 (To be executed by the registered holder if such holder desires to transfer the New Warrant Certificate.)

FOR VALUE RECEIVED _____ hereby sells, assigns and transfers unto (Please print name and address of transferee) this New Warrant Certificate, together with all right, title and interest therein, and does hereby irrevocably constitute and appoint the corporate Secretary of the Company, or such other duly appointed and authorized corporate officer that maintains the issuance and transfer records for the Original Warrants and the New Warrants, to transfer the within New Warrant Certificate on the books of the within-named Company, with full power of substitution.

Dated: _____

Signature:_____          SSN:_____

(Signature must conform in all respects to name of holder as specified on the face of the New Warrant Certificate)
(Insert Social Security or Other Identifying Number of Assignee)

12

**EXHIBIT "E"**